UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,
*ex rel.*, ROBERT LAUCIRICA,

      Plaintiff,

v.

STRYKER CORPORATION, and
HOWMEDICA OSTEONICS
CORPORATION d/b/a STRYKER
ORTHOPAEDICS; DR. HARI K.
PARVATANENI,

      Defendants.
_____/

CASE NO. 1:09-CV-63

HON. ROBERT J. JONKER

## OPINION AND ORDER

This matter is before the Court on Defendants' Joint Motion to Dismiss under FED. R. CIV. P. 9(b) (docket # 41). The Court heard oral argument on the motion on April 29, 2010. The Court has thoroughly reviewed the record and carefully considered the applicable law. The matter is ready for decision.

### A. Procedural Background

The United States and Relator Robert Laucirica originally brought this *qui tam* action on October 7, 2008, in the Southern District of Florida. (Verified Compl., docket # 1.) The United States and Mr. Laucirica stipulated to a transfer of venue to the Western District of Michigan, and an order effecting the transfer issued on December 4, 2008 (docket ## 5, 6). In seeking the transfer, the government and Mr. Laucirica emphasized that the U.S. Attorney's office for the Western District of Michigan was conducting a broader national investigation of possible fraud and abuse in

connection with Stryker's financial relationships with orthopedic physicians and healthcare institutions. (docket # 5, at 2.) They suggested that this *qui tam* action might relate closely to the broader investigation. (*Id.* at 2-3.) The government eventually elected not to intervene, but reserved the right to intervene at a later point upon a showing of good cause, citing 31 U.S.C. § 3730(c)(3). (docket # 24). The government has been served with the motion to dismiss (docket # 41), but the government has not filed any statement regarding its position, if any, on the motion.[1] The government did appear at oral argument and had the opportunity to address the motion.

### B. Pleadings and Motion to Dismiss

Mr. Laucirica brings four counts against Defendants, the first three under the False Claims Act, and the fourth for unjust enrichment, based on alleged illegal kickbacks. (Verified Compl., docket # 1.) In their motion to dismiss, Defendants assert that Mr. Laucirica's complaint is deficient under FED. R. CIV. P. 9(b). At oral argument, Defendants argued further that the complaint also fails to satisfy the pleading requirements of FED. R. CIV. P. 8(a)(2). In addition, Defendants assert that Count IV, for unjust enrichment, fails to state a claim upon which relief may be granted. Defendants seek dismissal of the entire complaint with prejudice (docket #41).

The complaint describes Mr. Laucirica's affidavit, attached to the complaint, as "a statement of all material evidence and information related to the Complaint." (Verified Compl., docket # 1, ¶ 2.) Mr. Laucirica is a sales representative for Zimmer Deptula. (Laucirica Aff., ¶ 1.) He has been in the business of selling orthopedic medical devices for over twenty-five years. (*Id.* at ¶ 2.) In early

---

[1] 31 U.S.C. § 3730(b)(1) provides that "[t]he action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting." However, the requirement of government consent does not apply to involuntary dismissals. *Minotti v. Lensink*, 895 F.2d 100, 103 (2d Cir. 1990); *Shaver v. Lucas Western Corp.*, 237 F.3d 932, 934 (8th Cir. 2001).

2007, he called on Dr. Parvataneni at the University of Miami/Jackson Memorial Hospital. (*Id.* at ¶ 4.)  Dr. Parvataneni was familiar with Zimmer products. (*Id.*).  Dr. Parvataneni agreed to use Zimmer products. (*Id.* at ¶ 5.)  Mr. Laucirica stocked the inventory room at the University of Miami/Jackson Hospital with supplies and products he values at approximately $100,000. (*Id.*)  A few weeks later, Mr. Laucirica checked to determine the use of the Zimmer products he had provided. (*Id.* at ¶ 6.)  Dr. Parvataneni had not used any of the Zimmer products. (*Id.*)  Mr. Laucirica went to Dr. Parvataneni's office for an unscheduled visit and asked him why he had not been using the Zimmer products. (*Id.*)  Dr. Parvataneni told Mr. Laucirica that he had gone to dinner with Stryker representatives, and that Stryker had agreed to fund the training of his residents and certain of his research projects. (*Id.*)  Mr. Laucirica asked Dr. Parvataneni about the substance of his research projects, and the doctor was not forthcoming with details. (*Id.* at ¶ 7.)  Mr. Laucirica adds that:

> upon information and belief Dr. Parvataneni's explanations indicated to me that he was receiving funding from Stryker Corporation and that in exchange for that funding Stryker Corporation had made no specifics [sic] demands for nor provided any method for measurement of any research or resident teaching.  Further, upon information and belief Dr. Parvataneni's explanation to me indicated that he was receiving funding from Stryker Corporation primarily on the condition that he preferentially would use Stryker medical implant products and that Stryker Corporation in fact knew that Dr. Parvataneni had not been asked to document production of a specified amount of research or a given volume or quality of resident teaching.

Mr. Laucirica told Dr. Parvataneni that Mr. Laucirica understood that it would be illegal for any implant company to provide funding for research or resident education in exchange for preferential use of the company's implants for Medicare patients. (*Id.* at ¶ 8.)  Dr. Parvataneni told Mr. Laucirica

that should Zimmer decide to fund his research projects, he would be willing to discuss further conditions for his use of Zimmer products. (*Id.*)

On the basis of Mr. Laucirica's experience with Dr. Parvataneni, the complaint alleges a kickback scheme under which Dr. Parvataneni agreed to use Stryker's medical devices for implantation into Medicare patients in exchange for Stryker's agreement to fund the training of Dr. Parvataneni's residents and various research projects. (*Id.* at ¶ 29.) The complaint notes that to participate in the Medicare program, Dr. Parvataneni "and/or [his] affiliated medical providers and hospitals" must complete a supplier/provider application for the government.[2] (*Id.* at ¶ 26.) The complaint states that the application requires Dr. Parvataneni "and/or [his] affiliated medical providers and hospitals [to] certify that they will comply with all laws, regulations, and guidance concerning proper practices for Medicare participants." (*Id.*) Mr. Laucirica's theory appears to be that Dr. Parvataneni and Stryker engaged in an illegal kickback scheme, and that any certifications they made concerning compliance with all applicable laws were therefore false, which rendered any requests for reimbursement from Medicare violations of the False Claims Act. The complaint does not actually allege that Defendants submitted a false claim; only that they must have done so.

Under the False Claims Act, a person who "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government," is civilly liable. 31 U.S.C. § 3729(a)(2). The Sixth Circuit has summarized the elements of a claim under the False Claims Act:

---

[2] The complaint states that the application goes to "BBS," which appears to be a typographical mistake. It should read "HHS," which the complaint identifies as the U.S. Department of Health and Human Services.

> First, the defendant must have made a false statement or created a false record, and must have done so with 'actual knowledge,' 'deliberate ignorance,' or 'reckless disregard of the truth or falsity of the information'. . . . Second, the defendant must have submitted a claim for payment to the federal government. . . . Third, the defendant's false statement must have been made with the purpose of getting a false or fraudulent claim paid or approved by the Government. . . . Finally, the defendant's false statement or record must have been material to the government's decision to make the payment sought in the defendant's claim.

*United States ex rel., SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504-05 (6th Cir. 2008) (quotations and citations omitted). Defendants claim Plaintiff has failed to state a viable claim, and move to dismiss under FED. R. CIV. P. 9(b), which provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other person's mind may be alleged generally." Defendants argue further that the complaint also fails to satisfy FED. R. CIV. P. 8(a)(2), which requires a pleading stating a claim for relief to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), the "short and plain statement" must include enough to "raise a right to relief above the speculative level." Defendants also move to dismiss Plaintiff's unjust enrichment claim (Count IV) for failure to state a claim upon which relief may be granted.

### C. False Claims Act (Counts I – III)

#### 1. Standards

In considering a motion for dismissal under FED. R. CIV. P. 9(b) in the *qui tam* context, as well as under FED. R. CIV. P. 8(a)(2), a court "must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *United States ex rel. Bledsoe*

*v. Cmty Health Sys., Inc.*, 501 F.3d 493, 502 (6th Cir. 2007) ("*Bledsoe II*") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. at 570). Rule 9(b)'s requirement "should not be . . . decoupled from the general rule that a pleading must only be so detailed as is necessary to provide a defendant with sufficient notice to defend against the pleading's claims." *SNAPP, Inc.*, 532 F.3d at 503 (citing *Bledsoe II*, 501 F.3d at 503; *Sanderson v. HCA-The Healthcare Company*, 447 F.3d 873, 877 (6th Cir. 2006)). "Rule 9(b) should be interpreted in harmony with Rule 8's statement that a complaint must only provide 'a short and plain statement of the claim' made by 'simple, concise, and direct allegations.'" *Id.* (citing *Sanderson*, 447 F.3d at 877 (quoting FED. R. CIV. P. 8(a))).

Rule 8(a)(2) requires only a "short and plain statement" of a claim designed to "give the defendant fair notice" of the claim against her. *Conley v. Gibson,* 355 U.S. 41, 47 (1957). The Supreme Court has clarified that to meet that standard and survive a Rule 12(b)(6) motion to dismiss, a complaint must allege sufficient facts to "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. *Twombly* does not change the notice-pleading standards, but it does require a plaintiff's complaint to contain "more than labels and conclusions." *Id.* at 1964. This holding takes a step away from the long-standing "no set of facts" standard established by *Conley*. *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957) ("[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."). Indeed, the Court found that " *Conley*'s 'no set of facts' language had been questioned, criticized, and explained away" such that "this famous observation had earned its retirement." *Twombly,* 550 U.S. at 562. Applying a newly crafted "plausibility" test, the Court held that a Sherman Act Section 1 claim must include "enough factual matter (taken as true) to suggest that an agreement was made." *Id.* at 1965. The alleged agreement

in restraint of trade need not be probable, but the complaint must contain sufficient factual allegations "to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Id.* This is an especially delicate and important inquiry in cases under not only the federal antitrust laws, but also under the claims alleged in this case, where inferences of intention from potentially neutral conduct are necessary to sustain the federal claim, and where unusually invasive pretrial discovery is a near certainty for any such claim surviving a motion to dismiss. *Cf. CSX Transp., Inc. v. Meserole Street Recycling, Inc.*, 570 F. Supp. 2d 966, 969 (W.D. Mich. 2008) (applying the *Twombly* standard to dismiss a RICO claim in a set of commercial shipping dispute cases). In essence, under *Twombly* a complaint asserting such a claim must contain enough facts to support a "plausible," and not merely a "conceivable," claim for relief. *Id.* at 1974.

In *Ashcroft v. Iqubal*, __ U.S. __, 129 S. Ct. 1937, 173 L. Ed.2d 868 (2009), the Supreme Court itself made clear that *Twombly* reaches well beyond the anti-trust context. *Ashcroft* reiterates broadly that

> [t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'

*Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556-57, 570). The determination of whether a complaint states a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950 (citation omitted). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,

the complaint has alleged – but it has not "show[n] . . . that the pleader is entitled to relief." *Id.* (quoting FED. R. CIV. P. 8(a)(2)). Rule 9 does not give a party "license to evade the less rigid – though still operative – strictures of Rule 8." *Id.* at 1954 (citing 5A C. Wright & A. Miller, *Federal Practice and Procedure*, § 1301, p. 291 (3d ed. 2004)).

The "context-specific task" of applying Rule 8 and 9(b) in this case requires consideration of the special policies and requirements of the False Claims Act. Multiple purposes underlie Rule 9(b)'s heightened pleading requirement. "Claims of fraud 'raise a high risk of abusive litigation.'" *Marlar*, 525 F.3d at 445 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. at 569 n. 14). Rule 9(b) also exists "to protect defendants from 'spurious charges of immoral and fraudulent behavior.'" *Id.* (quoting *Bledsoe II*, 501 F.3d at 510). Finally, "Rule 9(b) is intended to provide defendants with 'notice of the specific conduct with which they were charged,' so that the defendants can prepare responsive pleadings.'" *Id.* (quoting *Bledsoe II*, 501 F.3d at 510). The Rule 9(b) requirements for a *qui tam* action are demanding: "In complying with Rule 9(b), a plaintiff, at a minimum, must 'allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" *Bledsoe II*, 501 F.3d at 504 (quoting *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993); *accord SNAPP, Inc.*, 532 F.3d at 504; *United States v. Marlar*, 525 F.3d 439, 444 (6th Cir. 2008). "Where a complaint alleges 'a complex and far-reaching fraudulent scheme,' then that scheme must be pleaded with particularity and the complaint must also 'provide [] examples of specific' fraudulent conduct that are 'representative samples' of the scheme." *Marlar*, 525 F.3d at 444-45 (quoting *Bledsoe II*, 501 F.3d at 510)). Under Rule 9(b), malice, intent, knowledge, and other mental states may be alleged generally. Accordingly, a relator need not plead the knowledge

8

or intent elements of a claim under the False Claims Act with particularity. *SNAPP, Inc.*, 532 F.3d at 505. However, a *qui tam* complaint must at a minimum allege:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the government, and (4) what the defendants obtained as a consequence of the fraud.

*Sanderson*, 447 F.3d at 877 (citing *United States ex rel. Clausen v. Laboratory Corp. of America, Inc.*, 290 F.3d 1301, 1310 (11th Cir. 2002)).

### 2. Analysis

Mr. Laucirica's complaint satisfies neither the ordinary pleading standards of Rule 8(a)(2) nor the heightened pleading standards of Rule 9(b). The skeletal factual allegations in the complaint do not "raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. On the contrary, the conduct Mr. Laucirica describes in his affidavit – the basis of all of his allegations – is neutral on its face and could just as easily support an inference of legality as of illegality. A medical device company's funding of research and training is not *per se* illegal. Legality depends on whether the funding was bona fide and in compliance with applicable rules and regulations or whether the funding was simply a cleverly disguised cover for a flat out bribe or kickback. Nothing in Plaintiff's allegations make the inference of illegal intent and conduct any more plausible than the inference of legal intent and conduct. To the contrary, Plaintiff's claim that Defendant Parvataneni invited him to discuss conditions that would need to apply to any research Plaintiff's employer was interested in funding suggests, if anything, a concern to ensure legal compliance rather than to evade or break the law. The allegations in the complaint are at most "merely consistent with" Plaintiff's theory of liability; accepting the allegations as true does not cross

9

the threshold beyond the "mere possibility" that a violation of the Anti-kickback Statute or the False Claims Act occurred. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557).

Nor does the complaint satisfy the particular Rule 9(b) requirements for a *qui tam* action. The complaint does not allege the time or place of the alleged misrepresentations, nor does it allege any injury resulting from the fraud. To satisfy Rule 9(b), the relator must allege all of those elements. *Sanderson*, 447 F.3d at 877. Moreover, the complaint does not even allege a single particular fraudulent claim. Yet "the fraudulent claim is 'the *sine qua non* of a False Claims Act violation.'" *Id.* at 878 (quoting *United States ex rel. Clausen v. Laboratory Corp. of America, Inc.*, 290 F.3d 1301, 1311 (11th Cir. 2002)). Here, Mr. Laucirica simply speculates that Dr. Parvataneni (whether by himself or through the healthcare organizations with which he worked) must have sought Medicare reimbursement over the years. Indeed, Mr. Laucirica does not allege that Dr. Parvataneni has performed a single medical procedure since his alleged illegal agreement with Stryker, let alone that he has ever sought reimbursement for a procedure. Mr. Laucirica does not offer even an estimate of the time period during which the allegedly improper reimbursements were sought. Rule 9(b) "'does not permit a False Claims Act plaintiff merely to describe a private scheme in detail but then to allege simply . . . that claims requesting illegal payments must have been submitted, were likely submitted, or should have been submitted to the Government.'" *Id.* (quoting *Clausen*, 290 F.3d at 1311). Finally, Mr. Laucirica articulates no particular injury that resulted from the alleged violations of the False Claims Act. He simply has not satisfied the pleading requirements under Rule 9(b) as the Sixth Circuit has interpreted the rule.

The Sixth Circuit has at least twice found under similar circumstances that relators in false claims actions failed to satisfy the Rule 9(b) particularity requirements. *See Sanderson*, 447 F.3d at 877-79; *Marlar*, 525 F.3d at 444-47. In *Sanderson*, the relator alleged that the defendant healthcare institution had violated the False Claims Act by filing hospital cost reports based on improper allocations of corporate debt to support reimbursements from the government. *Sanderson*, 447 F.3d at 874. The complaint did not refer to any specific fraudulent cost report or claim filed with the government, nor did it state who had filed such a claim or when the claim might have been filed. *Id.* at 875. The court found the complaint deficient under Rule 9(b) because, among other things, the complaint "'[d]id not identify any specific claims that were submitted to the United States or identify the dates on which those claims were presented and relie[d] . . . exclusively on conclusory allegations of fraudulent billing.'" *Id.* at 877 (quoting *Clausen*, 290 F.3d at 1311). The same analysis applies to Mr. Laucirica's complaint. Indeed, the complaint in *Sanderson* contained more detail than Mr. Laucirica's complaint does. In *Sanderson*, the relator at least provided a description of the allegedly improper accounting methodology used to allocate the corporate debt and identified specific loans relating to the corporate debt. In contrast, Mr. Laucirica has identified no specific payments from Stryker, no particular use of Stryker products, and no particular claim paid by the government.

In *Marlar*, the relator alleged that the defendant company, her former employer, had systematically under-reported injuries and illnesses in regular reports to the Department of Energy. *Marlar*, 525 F.3d at 443. Under a contract between the Department of Energy and the defendant, the defendant received greater compensation for fewer work-related injuries and illnesses. *Id.* The relator, a nurse practitioner, described in her complaint particular examples of allegedly improper

11

medical record-keeping in 2002 and 2003. *Id.* She claimed that the defendant used these medical records to construct false reports and that the defendant made false certifications to the government based upon the false reports. *Id.* at 446. However, she did not identify any specific false claims actually submitted to the government, nor did she identify how the allegedly false reports made use of the medical records. *Id.* at 447. In the absence of specific claims or a factual basis for her claims, her complaint could not meet the requirements of Rule 9(b). *Id.* at 448. The same analysis applies to Mr. Laucirica's complaint.

Mr. Laucirica argues that the Sixth Circuit relaxes the requirements under Rule 9(b) where defendants control the information a plaintiff would need to make allegations with sufficient particularity to satisfy the rule. (Relator, Robert Laucirica's, Resp. to Defs.' Joint Mot. to Dismiss, docket # 49, at 3-4.) However, Mr. Laucirica cites no False Claims Act case in which the Sixth Circuit has actually relaxed the pleading requirements in the manner he describes. He relies primarily on a footnote from *Bledsoe II*, in which the Sixth Circuit panel stated,

> We do not intend to foreclose the possibility of a court relaxing [the requirements that a relator allege specific false claims] in circumstances where a relator demonstrates that he cannot allege the specifics of actual false claims that in all likelihood exist, and the reason that the relator cannot produce such allegations is not attributable to the conduct of the relator.

*Bledsoe II*, 501 F.3d at 504, n. 12. The same footnote goes on to explain, though, that "[b]ecause this case does not present such circumstances, we express no opinion as to the contours or existence of any such exception to the general rule that an allegation of an actual false claim is a necessary element of an FCA violation." *Id.* The *Bledsoe II* court recognized the possibility that such an exception might exist under appropriate circumstances, but it did not go even so far as to acknowledge that such an exception does exist. It then affirmed dismissal of several False Claims

12

Act claims under Rule 9(b). Mr. Laucirica also cites *Marlar*, but that case simply recites the line from *Bledsoe II* noting the possibility of a court relaxing the pleading requirements quoted above. *Marlar*, 525 F.3d at 446. Like the *Bledsoe II* panel, the *Marlar* panel concludes that "this case does not call upon us to establish such an exception." *Id.* And like *Bledsoe II*, *Marlar* went on to affirm dismissal of False Claims Act claims under Rule 9(b).[3]

### 3. Possibility of Amendment

At oral argument, Plaintiff requested leave to amend if the Court granted Defendants' motion to dismiss. Federal practice almost always permits a Plaintiff at least one opportunity to amend. *See, e.g., Gordon v. England*, 354 F. App'x 975, 982-83 (6th Cir. 2009); *E.E.O.C. v. Ohio Edison Co.*, 7 F.3d 541, 546 (6th Cir. 1993); *Oil Chemicals and Atomic Workers Int'l Union, AFL-CIO v. Delta Ref. Co.*, 277 F.2d 694, 697-98 (6th Cir. 1960). The practice of permitting at least one opportunity to amend is especially practical when the basis of the court's dismissal is a pleading deficiency. Defendants contend there is no way Plaintiff can cure the pleading deficiency here because he has stated in his affidavit that he has already disclosed everything important he knows. Defendants may well be correct that Plaintiff will have a difficult time pleading an amended complaint that satisfies the *qui tam* pleading requirements and that remains consistent with what he had already stated. But the best way to test this is by giving Plaintiff an opportunity to try. "A wise judicial practice (and one that is commonly followed) would be to allow at least one amendment regardless of how

---

[3] All of the other cases Plaintiff cites in support of a relaxed pleading standard are inapposite because they do not involve the False Claims Act. *Michaels Building Co. v. Ameritrust Company, N.A.*, 848 F.2d 674 (6th Cir. 1988); *Craighead v. E.F. Hutton & Co., Inc.*, 899 F.2d 485 (6th Cir. 1990); *Jordan v. Global Natural Resources, Inc.*, 564 F. Supp. 59 (S.D. Ohio 1983); *Imperial Supply Co. v. Northern Ohio Bank*, 430 F. Supp. 339 (N.D. Ohio, 1976).

unpromising the original pleading appears." 5B Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure*, § 1357 (3d ed. 2004).

Accordingly, the Court grants Defendants' Motion to Dismiss Counts I-III, but gives Plaintiff 21 days from the date of this opinion and order to file an amended complaint. The normal time line will apply to Defendants' obligation to respond. If Plaintiff chooses not to file an amended complaint, the Court will enter judgment after 21 days.

### D. Unjust Enrichment (Count IV)

Count IV asserts a state law claim for unjust enrichment based on alleged kickbacks. There is no private right of enforcement under the Anti-Kickback law. *United States ex rel. Villafane v. Solinger*, 543 F. Supp. 2d 678, 683. (W.D. Mich. 2008). *See* 42 U.S.C. § 1320a-7b(b) (establishing criminal, not civil, penalties under the statute). Moreover, courts have ruled that "a relator in a *qui tam* [False Claims Act] action does not have standing to assert common law claims based upon injury sustained by the United States." *United States ex rel. Rockefeller v. Westinghouse Elec. Co.*, 274 F. Supp. 2d 10, 14 (D.D.C. 2003) (citing *United States ex rel. Phipps v. Comprehensive Cmty. Dev. Corp.*, 152 F. Supp. 2d 443, 451-52 (S.D.N.Y. 2001); *United States ex rel. Walsh v. Eastman Kodak Co.*, 98 F. Supp. 2d 141, 149 (D.Mass. 2000); *United States ex rel. Long v. SCS Bus. & Tech. Inst.*, 999 F. Supp. 78, 92 (D.D.C. 1998)). Accordingly, Count IV fails to state a claim and must be dismissed.

### E. Conclusion

Mr. Laucirica's False Claims Act Counts (Counts I -III) satisfy neither the ordinary pleading requirements of Rule 8(a)(2), nor the heightened pleading requirements of Rule 9(b). Further, Count IV of the complaint fails to state a claim upon which relief may be granted in any event.

**ACCORDINGLY, IT IS ORDERED:**

1. Defendants' Motion to Dismiss Counts I, II and III is **GRANTED**, but the Court gives Plaintiff 21 days from the date of this opinion and order to file an amended complaint. The normal time line will apply to Defendants' obligation to respond. If Plaintiff chooses not to file an amended complaint, the Court will enter judgment after 21 days.

2. Defendants' Motion to Dismiss Count IV is **GRANTED**.

Dated:     May 3, 2010                         /s/ Robert J. Jonker
                                              ROBERT J. JONKER
                                              UNITED STATES DISTRICT JUDGE